**Gen. 31]** 31

## ALCOHOLIC BEVERAGES

**LIQUOR BOARDS – WORCESTER COUNTY DEPARTMENT OF LIQUOR CONTROL QUALIFIES AS A WHOLESALER UNDER ANTI-PRICE-DISCRIMINATION PROVISIONS WHEN IT PURCHASES ALCOHOL FOR RE-SALE TO RETAILERS**

March 14, 2014

*The Honorable James N. Mathias, Jr.*
*Senate of Maryland*

*The Honorable James C. Church*
*President, Board of County Commissioners*

You have asked our opinion about whether the Worcester County Department of Liquor Control ("DLC") should be treated as a retailer or as a wholesaler when it purchases alcohol from a licensed Maryland wholesaler. Your request stems from the fact that the DLC can act as either a retailer or a wholesaler in such transactions. Like a retailer, the DLC purchases alcohol for sale to consumers in its own retail stores—called "dispensaries"—and, like a wholesaler, it distributes alcohol to bars, restaurants, and other privately-owned retailers. Until 2013, Maryland's excise tax laws treated the DLC like a retailer when it bought from a wholesaler in that the alcohol the DLC purchased had to be "tax-paid," *i.e.*, the wholesaler had to pay the excise tax on the alcohol before selling it to the DLC, as is the case for retailers generally. Based on these tax provisions, the wholesalers that supply much of the DLC's stock treat it exclusively as a retailer and charge it the same price as they charge other retailers. Materials you included with your request indicate that this situation undermines the DLC's ability to supply alcohol to Maryland retailers, and its own dispensaries, at prices that are competitive with nearby Delaware retailers.

Your request involves two related questions: First, when purchasing alcohol from a wholesaler, must the DLC (like other retailers) always buy products on which the Maryland excise tax has already been paid? And second, is the DLC a "retailer" or "wholesaler" for purposes of Article 2B § 12-102(a), which prohibits wholesalers from "discriminat[ing] . . . in price, discounts or the quality of merchandise sold between . . . one

wholesaler and another wholesaler or between one retailer and another retailer"?

In our opinion, the answer to both questions depends on whether, in a particular situation, the DLC is distributing alcohol to retailers or selling it directly to consumers in its dispensaries. As to the first question, legislation enacted in 2013 clarifies that the alcohol the DLC purchases must be "tax paid" when acquired for re-sale to consumers, but must be "non-tax-paid" when acquired for re-sale to bars, restaurants, and other licensed retailers. With respect to the second question, a wholesaler must charge the DLC the "wholesale price" it charges other wholesalers (to the extent it sells to other wholesalers) when the DLC acquires the alcohol for re-sale to retailers, but must charge the DLC a "retail price" when the DLC acquires the alcohol for re-sale to consumers in its dispensaries.

# I

## Background

### A.  *Departments of Liquor Control and Liquor Control Boards*

Maryland has a complicated scheme for licensing and regulating the sale and distribution of alcoholic beverages. The overarching purpose of this scheme is "to foster and promote temperance, to prevent deceptive, destructive, and unethical business practices, and to promote the general welfare of its citizens by controlling the sale and distribution of alcoholic beverages." Md. Ann. Code, art. 2B, § 1-101(b)(1).[1] Maryland furthers this purpose primarily through a statewide system designed to license and oversee private producers, wholesalers, and retailers of alcohol. Generally speaking, boards of license commissioners located in each county license and regulate retail sellers of alcoholic beverages within that county, § 15-112, *see also* 95 *Opinions of the Attorney General* 164, 165 (2010), whereas the State Comptroller is in charge of licensing and regulating manufacturers within Maryland, dealers who import alcohol from other jurisdictions, and wholesalers. *See*, *e.g.*, §§ 2-101(a), 10-101(a). The Comptroller also collects the excise tax required under Title 5 of the Tax-General Article. *See* Md. Code Ann., Tax-General ("TG") § 5-301.

---

[1]   Unless otherwise indicated, all statutory references in this opinion are to Article 2B of the Annotated Code of Maryland (2011 Repl. Vol., 2013 Supp.).

In a small number of counties, a "liquor control board" or a "department of liquor control"[2] regulates the sale and distribution of alcohol through the operation of liquor dispensaries, which make retail sales of certain alcoholic beverages (typically wine and spirits, but not beer or "light wine"). 94 *Opinions of the Attorney General* 134, 136 (2009). Because of the importance of the liquor control boards to this opinion, we step back to develop the history of the liquor control boards and how they have evolved.

*History of Liquor Control Boards*

Liquor control boards were initially created in four counties in 1933 on the theory that direct public control over the sale of alcohol might "eliminate[] the profit motive that otherwise would stimulate excessive consumption." 95 *Opinions of the Attorney General* at 168; *see also* 1933 Md. Laws, ch. 2 (sp. sess.). Each liquor control board was established by a separate code section that established its powers and, except for Montgomery County, each section included language specifying that the alcohol the board purchased from wholesalers must be tax-paid. *See, e.g.*, § 48D(2) (1935 Supp.) (authorizing Worcester County liquor control board to purchase wine and liquor "upon which the tax imposed by this Article has been paid").[3]

---

[2] The principal difference between a "liquor control board" and a "department of liquor control" is its governance: Liquor control boards are State entities the members of which are appointed by the Governor, *see* § 15-201(c)(1), while the two departments of liquor control—in Montgomery County and Worcester County—are departments of county government with their members appointed by the county. *See* §§ 15-201(a)(2)(i), (c)(7) (Montgomery DLC); 15-201(a)(3)(i)1, (c)(5) (Worcester DLC), *see also* 94 *Opinions of the Attorney General* 134 (2009). Despite the differences in name and governance, the departments of liquor control play much the same role that liquor control boards play. *See* § 15-201(a)(2)(ii) (providing that the Montgomery County DLC shall have "the powers of a liquor control board as defined in § 15-205 of this subtitle"), (a)(3)(i)2 (same, for Worcester County DLC).

[3] The several county-specific provisions requiring that liquor control boards purchase wine and liquor upon which the excise tax had already been paid were consolidated in 1947 as part of the wholesale recodification of Article 2B and made applicable to all liquor control

Under the 1933 legislation, only Montgomery County was given the authority to operate retail dispensaries *and* sell certain kinds of alcohol at wholesale to "licensed dealers [within the county] . . . who [were] authorized to resell such beverages." § 48A(2) (1935 Supp.). The liquor control boards in three other counties—Worcester, Wicomico, and Queen Anne's—were given the power to operate retail dispensaries but not to sell alcohol wholesale because no mechanism existed for retail sales of wine and liquor in these counties other than through the dispensaries.[4] *See*, *e.g.*, § 48D (1935 Supp.) (relating to Worcester County); *see also* Leonard V. Harrison & Elizabeth Laine, "After Repeal: A Study of Liquor Control Administration," 108, 237 (1936) (observing that Montgomery, Worcester, Wicomico, and Queen Anne's counties had "the exclusive right to sell spirits and wine within their borders"). At that time, therefore, all of the control boards except Montgomery County functioned solely as retailers within their counties.

Over the ensuring years more control boards were given the authority to sell certain alcoholic beverages at wholesale to other retailers in their counties and, like Montgomery County, began to function in a dual role as both a wholesaler and a retailer. In 1937, for example, the Worcester County liquor control board was given the authority to purchase beer and light wine and then distribute that alcohol to private retailers in the county.[5] 1937 Md. Laws, ch. 301.

Then, in 1947, Article 2B was revised and re-codified in its entirety and, for the first time, incorporated all Public Local Laws relating to alcoholic beverages. *See* 1947 Md. Laws, ch. 501; *see*

---

boards through what now appears as § 15-205(b). *See* 1947 Md. Laws, ch. 501 (§ 146(b)).

[4] Liquor control boards may theoretically have been able to make wholesale sales to retailers in other counties. *See* Art. 2B, §§ 48D (1935 Supp.) (permitting the Worcester County liquor control board "[t]o sell and ship outside of Worcester County any containers or packages of alcoholic beverages kept for sale in the dispensaries"); 48F (similar provision for Queen Anne's County). We have not, however, found any evidence of the extent to which they did so.

[5] Unlike Montgomery County, however, the Worcester County liquor control board could not sell this beer in its own retail dispensaries and did not have a monopoly over this wholesale distribution. *See* 22 *Opinions of the Attorney General* 111, 111-12 (1937).

*also Grillo v. State*, 209 Md. 154, 158 (1956). As part of that revision, all liquor control boards were expressly given an "absolute monopoly" on the sale and distribution of the alcoholic beverages they were authorized to sell. 1947 Md. Laws, ch. 501 (adding former § 145(a), currently codified at § 15-204(a)). In most of the counties with liquor control boards, this still meant that wine and liquor within the control counties was available for retail purchase by consumers only in dispensaries.

In at least Montgomery County and Worcester County, however, the 1947 legislative revision also reflected a wholesale role for the liquor control board. In Montgomery County, all licensed private retailers had to purchase their alcohol from the liquor control board. 1947 Md. Laws, ch. 501 (§ 145(b)). And, in Worcester County, the Legislature provided for the first time that hotels and restaurants in Ocean City could acquire a license to sell wine and liquor but required that they purchase their wine and liquor from the Worcester County liquor control board. *See* 1947 Md. Laws, ch. 501 (§ 17(j)). The Legislature extended this requirement beyond Ocean City to the rest of the county in 1959. *See* 1959 Md. Laws, ch. 415.

Other liquor control boards acquired this wholesaling function over time. By 1968, it appears that all of the boards in existence had the power to distribute wine and liquor wholesale to private retailers that were authorized to sell such beverages. *See*, *e.g.*, §§ 19(f) (Dorcester), 19(f-1)(5) (Garrett), 19(f-2)(4) (Harford), 19(j-1)(4) (Somerset), 19m (Worcester), 20(m-2)(3) (Wicomico), 161(c) (Kent), 162(b) (Montgomery), 162(c) (Caroline) (1968 Repl. Vol.).

*Liquor Control Boards Under Current Law*

Today six counties—Garrett, Harford, Montgomery, Somerset, Wicomico, and Worcester—have some form of liquor control board. *See* § 15-201. Of these six, only Montgomery, Somerset, Wicomico, and Worcester counties still operate local retail dispensaries for the sale of alcohol to consumers,[6] and, like

---

[6] The Harford County Liquor Control Board, though nominally a liquor control board, has since 1979 operated as a board of license commissioners without the power to operate dispensaries. *See* 94 *Opinions of the Attorney General* at 139. The Garrett County Liquor Control Board is authorized to exercise dispensary powers but does not do so. *Id.* at 138.

Montgomery County in 1933, each of these four also acts as the exclusive wholesale provider of specified alcoholic beverages to other private retail dealers in the county. *See* 94 *Opinions of the Attorney General* at 136-38; *see also* §§ 15-201, 15-203, 15-204. For this reason, these four counties are sometimes referred to as "control counties."

Although liquor control boards and county dispensaries are included in Article 2B's definition of "license holder," § 1-102(a)(15)(i), they need not apply to the Comptroller or local board of license commissioners for a license. *See* 1987 Md. AG LEXIS 42, *4-6 (1987) (Opinion No. 87-017, unpublished) (March 17, 1987); *see also* 72 *Opinions of the Attorney General* 375 (1987) (Synopsis of Opinion No. 87-017). That does not, however, place them beyond the Comptroller's regulatory authority. As clarified by the Legislature in 2012, the Comptroller may "enforce the provisions of [Article 2B] applicable to: (1) [t]he purchase or importation of alcoholic beverages by a department of liquor control or a liquor control board; and (2) [t]he sale of alcoholic beverages to a wholesaler or retail dealer by a department of liquor control or a liquor control board." 2012 Md. Laws, ch. 642 (adding § 16-407.1).

In 2011 the General Assembly abolished the Worcester County Liquor Control Board, which was a State agency, and replaced it with the Worcester DLC, which is a "department of the county government." *See* 2011 Md. Laws, ch. 304; § 15-201(a)(3)(i)1. As relevant here, the Worcester DLC has essentially the same functions and powers as the liquor control board that preceded it. *See* § 15-201(a)(3)(i)2 (providing that the Worcester DLC "has the powers of a liquor control board"). Those powers include an "absolute monopoly [over] the sale and distribution" of wine and liquor (but not beer) within its jurisdiction, § 15-204(a), and the responsibility to act as the exclusive source of wine and liquor for private retailers in Worcester County.[7] §§ 6-201(y)(7), 8-224(g). Moreover, the State empowered the new department to "acquire . . . wine and liquor from any source for resale," § 15-205(*l*)(1)(ii), and to operate retail "county liquor dispensaries" in Pocomoke City, Snow Hill, Berlin, and Ocean City, "or in a housing development with a population of at least 10,000" that meets other special

---

[7] The DLC may not, however, charge the private retail dealers more than 85 percent of what it charges consumers in its own retail stores. *See*, *e.g.*, §§ 6-201(y)(7), 6-401(y)(2)(vi), 8-224(g)(3).

requirements not relevant here. § 15-203(f). The DLC's monopoly over distribution in Worcester County will expire on July 1, 2014; after that date, retail dealers will be able to purchase alcohol from private, licensed Maryland wholesalers. § 15-204(e)(3)(i). However, the DLC will still have the authority to operate its own retail stores and to supply retail dealers who wish to purchase wine and liquor from it.

## B. The DLC's Status Within Maryland's Regulatory System

The Worcester County DLC and other liquor control boards that act as both wholesalers and retailers occupy a unique place within Maryland's regulatory and licensing scheme. Maryland—like a number of states—has established a three-tier system that ordinarily requires separation among producers, wholesalers, and retailers. *See generally* 91 *Opinions of the Attorney General* 174 (2006) (discussing three-tier system). In general, "[a]lcoholic beverage manufacturers, or suppliers, sell their products to wholesalers, who resell the alcoholic beverages to retailers." Maryland Taxes § 3.8 (MICPEL 4th ed. 2008); *see also* COMAR 03.02.01.03A(1) ("Properly licensed wholesalers and nonresident winery permit holders are a licensed retail dealer's source of supply for alcoholic beverages.").

At the top tier of this structure are manufacturers and producers. A "manufacturer" is "a person operating a plant *within this State* for distilling, rectifying, blending, brewing, fermenting or bottling any alcoholic beverage." § 1-102(a)(20) (emphasis added). Most manufacturers are prohibited from selling their products directly to Maryland retailers or consumers. *See* Maryland Taxes § 3.8 (observing that, under Maryland's three-tiered system, "[a]lcoholic beverage manufacturers, or suppliers, sell their products to wholesalers, who resell the alcoholic beverages to retailers"); *see also* § 2-401(b) (prohibiting manufacturers and wholesalers from selling to "any person in this State other than a licensee or permit holder"). These manufacturers are permitted only to sell to licensed wholesalers, persons outside the State who are authorized to acquire the products, and certain permit holders who are not relevant to our analysis here. *See*, *e.g.*, §§ 2-203(2)(ii), 2-204(2)(iii), 2-206(a)(iii). Some categories of manufacturers, such as wineries, small distilleries, and pub breweries, may sell directly to Maryland consumers, but only under certain circumstances. *See*, *e.g.*, §§ 2-202(a)(6)(iii), 2-

204(2)(iv), 2-207(b), 7.5-101–114 (Direct Wine Shipper's Permit).[8]

Out-of-state and foreign producers may also sell their alcohol in Maryland using a nonresident dealer permit or a resident dealer permit. A nonresident dealer permit is available to out-of-state producers, agents of out-of-state producers, and importers of foreign alcohol. § 2-101(i)(1). The holder of such a permit may sell, from a location outside of Maryland, any alcoholic beverages it produces or imports to "persons in Maryland who are authorized to receive them." § 2-101(i)(3). Retailers, however, generally are not authorized to buy directly from nonresident dealers. § 12-107; COMAR 03.02.01.03A(1). Therefore, these permit holders sell only to wholesalers. Along the same lines, a resident dealer permit is available to Maryland residents who import alcohol directly from foreign producers. § 2-101(v). A resident dealer may only sell to a licensed wholesaler or a person outside of the State authorized by the Comptroller. § 2-101(v)(4).

The next tier of this structure includes wholesalers, also known as "distributors." Wholesalers are permitted to acquire alcoholic beverages from manufacturers and holders of nonresident and resident dealer permits and to sell and deliver those alcoholic beverages to licensees and permit holders, *e.g.*, retailers or other wholesalers. *See* § 2-301(b); *see also* § 1-102(a)(27)(i) (defining "wholesaler"). A wholesaler may not sell or deliver alcoholic beverages directly to a consumer. § 2-301(b).

Retailers occupy the third tier of this regulatory structure. As explained above, with limited exceptions, "retail dealers" may only buy from wholesalers. Retail dealers may sell alcohol to consumers, but not to other license holders such as wholesalers,

---

[8] Until recently, Maryland wine manufacturers were permitted to sell directly to retailers. Lauren Dunnock, *Quaffable*, *But Far From Transcendent: Maryland's Twenty-First Century Prohibition*, 36 U. Balt. L. Rev. 271, 284-85 (2007). Now, only small wineries that produce not more than 27,500 gallons per year may apply for a "limited wholesaler's license," which allows them to act as their own wholesaler. *Id.*; *see also* § 2-301(b). These small wineries thus can still sell directly to retailers, but they do so as a wholesaler, not as a manufacturer. A similar limited wholesaler's license is available for Maryland breweries and micro-breweries that produce not more than 22,500 gallons of beer per year. § 2-301(b)(4).

manufacturers, or other retailers.[9] *See*, *e.g.*, § 1-102(a)(23) (defining "retailer"); *see also* § 12-107(a) (restricting retail dealer sales to other retailers). Along these same lines, Maryland law generally prohibits "tied houses," which are retail outlets controlled by a manufacturer, wholesaler, or other entity in the supply chain. *See* §§ 12-101 and 12-104(b). In short, as a general rule, alcoholic beverage retailers in Maryland cannot operate as wholesalers, and vice versa.

Liquor control boards and departments of liquor control are an exception to this rule. The prohibition on tied houses does not apply to them because they are subject to the more specific regulatory provisions of Title 15, Subtitle 2 of Article 2B, which, as discussed above, authorize them to act as both a wholesaler and a retailer. *See supra* at 5; *see also* § 1-103 (providing that specific provisions prevail over general rules where there is a conflict or inconsistency between them). Thus, the Worcester DLC performs the functions of a wholesaler when distributing alcohol to bars, restaurants, and other private retailers within the county, and it performs the functions of a retailer when selling alcohol directly to consumers in its own retail dispensaries. The Legislature has acknowledged a liquor control board's dual role by explicitly including "a county dispensary" within the code's definition of "retail dealer," § 1-102(a)(23), and a "liquor control board and a county wholesale dispensary" within the definition of "wholesaler." § 1-102(a)(27)(ii); *see also U.S. v. Maryland State Licensed Beverage Ass'n*, 138 F. Supp. 685, 699 (D. Md. 1956) (stating that Article 2B "permits the [liquor control] boards in [Montgomery County and the other monopoly] counties to act as both wholesalers and retailers"), *rev'd on other grounds*, 240 F.2d 420 (4th Cir. 1957).

## C.   *The Controversy Over the DLC's Status*

The dual role played by liquor control boards within Maryland's regulatory system raises some difficult questions. Under Maryland law, manufacturers, wholesalers, resident dealers, and nonresident winery permit holders[10] may not

---

[9]  A retailer that is going out of business, however, may obtain a private bulk sale permit that would allow that retailer to sell to another retailer. *See* § 12-107(a).

[10]  Similar provisions apply to certain other entities. *See* § 12-102(a) (making it unlawful for a nonresident dealer and nonresident unlicensed

"discriminate directly or indirectly in price, discounts or the quality of merchandise sold between one dispensary and another dispensary, between one wholesaler and another wholesaler or between one retailer and another retailer purchasing alcoholic beverages bearing the same brand and trade name and of like age and quality."[11]  § 12-102(a).  This provision was added in 1943 for the purpose of "eliminat[ing] the undue stimulation of the sale of alcoholic beverages and the practice of manufacturers and wholesalers in granting secret discounts, rebates, allowances, free goods or other inducement to selected licensees which contribute to a disorderly distribution of alcoholic beverages."  *See* 1943 Md. Laws, ch. 996 (§ 44A).

Because the definitions of both "wholesaler" and "retail dealer" in Article 2B include county dispensaries, it is not clear whether a liquor control board is supposed to be a "wholesaler" or a "retailer" for purposes of this anti-discrimination provision.  As we understand it, Maryland wholesalers have long considered their sales to liquor control boards to be retail sales and, hence, have charged the Worcester DLC and other Maryland dispensaries the same price as they charge private retailers.  *See* Letter from Robert Douglas to Adam Snyder, Chief of Opinions and Advice (Sept. 7, 2012); *see also U.S. v. Maryland State Licensed Beverage Ass'n*, 168 F. Supp. 431, 435 (D. Md. 1958) (observing that the liquor control boards in monopoly counties other than Montgomery County "have customarily purchased liquor from licensed wholesalers at prices similar to those charged by wholesalers to licensed retailers").  The Worcester DLC, however, believes that it is essentially a wholesaler (distributing alcohol both to its own retail stores and private retailers) and

---

manufacturer, among other entities, "to use or promote the use of any such practices [described above in § 12-102(a)]"); *see also* § 2-101(i)(3) (providing that the holder of a nonresident dealer's permit "may not discriminate directly or indirectly in price between Maryland licensees").

[11] Although the plain language of the provision would prohibit wholesalers and manufacturers from offering even volume discounts to their largest customers, the United States Court of Appeals for the Fourth Circuit has held that such a ban on volume discounts would violate the Sherman Antitrust Act.  *TFWS, Inc. v. Franchot*, 572 F.3d 186 (4th Cir. 2009).  Therefore, a Maryland wholesaler presumably may offer volume discounts as long as it offers the same opportunity to all licensees within a given class, if they can buy enough alcohol to qualify for the discount.

should receive the same price offered to other wholesalers. *See* Opinion of Worcester County Attorney John E. Bloxom (June 13, 2012) ("Bloxom Opinion").[12]

To support their interpretation of the anti-discrimination provision, the wholesalers contend that Maryland's alcohol excise tax system shows that the liquor control boards must be considered retailers when they purchase from Maryland wholesalers. Under Maryland's system, the wholesaler usually pays the excise tax on spirits or wine sold or delivered to retail dealers in the State. TG § 5-301(f). And while the tax must, under some circumstances, be paid by manufacturers, nonresident permit holders, or resident permit holders, *see* TG § 5-301(b)-(e), it appears that "retail dealers" never pay the tax, and always purchase alcohol on which the tax has already been paid.

Article 2B, § 15-205—which sets forth the general powers of liquor control boards—provides that liquor control boards and departments of liquor control must purchase alcohol from wholesalers and in-state manufacturers "upon which the tax imposed by § 5-102 of the Tax-General Article has been paid."[13] § 15-205(b). The statute thus requires that a liquor control board, when purchasing alcohol from a wholesaler, must purchase the alcohol "tax-paid"—like retailers do—regardless of whether it plans to sell the alcohol in its own stores or to other retailers. If extrapolated to the anti-discrimination provisions, § 15-205(b)

---

[12] This is not the first time that the dual nature of a liquor control board or department of liquor control has generated controversy. *See Maryland State Licensed Beverage Ass'n*, 168 F. Supp. 431 (addressing the anti-trust implications of suppliers' efforts to enforce "fair trade" agreements that were designed to prevent manufacturers from supplying alcohol to the Montgomery County DLC at or near wholesale prices rather than at retail prices).

[13] Historically, the only exception to this rule appears to have been the Montgomery County Department of Liquor Control. As originally created, the Montgomery County liquor control board "had the privilege of purchasing alcoholic beverages tax free from wholesale dealers." *See* Letter from William R. Pyle, Director of the Comptroller's Alcohol and Tobacco Tax Division to Edward T. Conley, Superintendent of the Worcester County Liquor Control Board at 1 (Jan. 13, 1988) ("Pyle Letter"). Because the portion of the 1947 statute in which § 15-205(b) was first enacted was thought to be a non-substantive recodification, the Comptroller's Office concluded that the new law could not change the existing rules for Montgomery County. *Id.*

might suggest that liquor control boards should always be treated as "retailers" when they buy alcohol from wholesalers.

### D.  Past Advice from the Comptroller and Attorney General's Office

There is some support for the wholesalers' interpretation of §§ 12-102(a) and 15-205(b) in past advice from the Comptroller and the Attorney General's Office.  Since at least 1988, the Comptroller's Office has interpreted § 15-205(b) to require that liquor control boards always purchase their alcohol from wholesalers "tax paid."  *See* Pyle Letter.  And in 2003, an Assistant Attorney General advised the Comptroller's Office that sales of products from the Worcester County liquor control board to another county liquor control board[14] must be viewed as "retail sales" because the excise tax has already been paid, and, as such, the Worcester County liquor control board must, under § 12-102(a), charge the same price that it charges private retailers.  Memorandum of Assistant Attorney General Gerald Langbaum, Counsel to the Comptroller, to Charles W. Ehart, Director of the Alcohol and Tobacco Tax Division (May 6, 2003); *see also* Letter from Charles W. Ehart to Robert L. Cowger, Jr., Executive Director of the Worcester County Liquor Control Board (May 8, 2003) (relaying this legal interpretation to Worcester County).

Although the question answered in that advice memorandum did not involve sales from *private* wholesalers to liquor control boards, the same logic would dictate that "tax paid" sales from wholesalers to county control boards would also be treated as retail sales and that wholesalers would therefore have to charge liquor control boards the same price as they charged other retail dealers.  Indeed, the Comptroller's Office advised the Worcester County DLC as recently as 2012 that private wholesalers must treat the DLC as a "retailer" under § 12-102(a) because the DLC buys all of its products from wholesalers "tax paid."  *See* Letter from Jeffrey A. Kelly, Director of the Field Enforcement Division, to Robert L. Cowger, Jr., Director of the Worcester County Department of Liquor Control (May 1, 2012).  According to the Comptroller's Office, this has been the agency's position since 1987.  *Id.*

---

[14] In 1987, we issued an unpublished opinion concluding that a county liquor control board could sell alcohol to other county liquor control boards.  *See* 1987 Md. AG LEXIS 42.  We have no occasion in this opinion to revisit that conclusion.

The Worcester DLC did not agree with the Comptroller's position. Worcester County believed that the logic of the Comptroller's analysis was at best "debatable" and that the timing of the excise tax should have "no bearing" on whether the liquor control board purchased as a wholesaler or as a retailer. Bloxom Opinion at 3. But whatever merit there once may have been to the Comptroller's analysis, Worcester County asserted, it evaporated in 2011 when the Worcester County liquor control board was replaced by a newly-formed Worcester DLC with the "expanded power[]" to purchase wine and liquor "from *any source* for resale." *Id*. (quoting § 15-205(*l*) (2011 Repl. Vol.)) (emphasis supplied). Because the newly-amended subsection (*l*) granted DLC the power to acquire alcohol without reference to the imposition of the excise tax, Worcester County argued that the tax provisions of § 15-205(b)—upon which the Comptroller's prior analysis hinged—no longer applied. *Id*. To resolve the disagreement between the Comptroller's analysis and the County Attorney's, Worcester County asked the members of the General Assembly representing the county, including Senator James N. Mathias, to request an official opinion from the Attorney General on whether the DLC should be treated as a "wholesaler" or a "retailer" under § 12-102(a). Senator Mathias forwarded the opinion request to the Attorney General's Office.

### E.    The 2013 Amendments to § 15-205

During the 2013 session, while this opinion was pending, the General Assembly adopted legislation amending a relevant portion of the statute governing the powers of the Worcester County DLC. 2013 Md. Laws, ch. 584. As originally introduced, the relevant bills had no effect on the DLC and instead concerned other aspects of alcohol regulation in Worcester County. *See* Senate Bill 949 (2013) (First Reader); House Bill 999 (2013) (First Reader). But both were ultimately amended to add the following language to § 15-205(*l*) of Article 2B, which governs the powers of the Worcester DLC:

> (2) (i) 1. *Acting as a wholesaler*, the Department of Liquor Control may purchase wine and liquor, on which the excise tax has not been paid, from a licensed wholesaler.
>
> 2. The Department of Liquor Control may only resell the wine and liquor purchased under this subparagraph to a

> nondispensary, licensed retailer, and only after the excise tax has been paid.
>
> (ii) *Acting as a retailer*, the Department of Liquor Control may purchase wine and liquor, on which the excise tax has been paid, from a licensed wholesaler for retail sale in dispensary stores.

2013 Md. Laws, ch. 584 (emphases added). The Senate adopted this language as a floor amendment proposed by Senator Mathias, *see* Senate Proceedings No. 55, 2013 Reg. Sess. (March 28, 2013), while the House added the language as part of a committee floor amendment, *see* House Proceedings No. 54, 2013 Reg. Sess. (March 25, 2013). Ultimately, the Senate Bill became law, and the House Bill was vetoed by the Governor as duplicative. 2013 Md. Laws, ch. 584; *see also id.*, Vol. VII at 6125 (Governor's veto letter, explaining that HB 999 was vetoed as duplicative).

## II

## Analysis

We begin our analysis by considering the argument that the excise tax provisions of § 15-205(b) require the DLC to be treated as a retailer for purposes of the anti-price-discrimination provisions of § 12-102(a). As discussed above, § 15-205(b) requires that liquor control boards and departments of liquor control, when purchasing from wholesalers, must purchase wine and liquor "upon which the tax imposed by § 5-102 of the Tax-General Article has been paid . . . ." Because retailers also purchase their alcohol from wholesalers "tax paid," the wholesalers have traditionally argued that the DLC and other liquor control boards must be considered retailers for purposes of § 12-102(a). This rationale has similarly formed the basis of the Comptroller's traditional position that liquor control boards are always "retailers" when buying from wholesalers—a position that was underpinned by prior advice from this Office.

At the outset, we must acknowledge some doubt that the General Assembly intended the tax rules of § 15-205(b) to govern how the anti-discrimination provisions of § 12-102(a) should be applied. The provisions were not enacted at the same time and serve different purposes, and there is no indication from the statutory language, statutory structure, or legislative history that the Legislature intended the two provisions to be read in tandem. The Legislature may simply have intended to create an easy-to-administer rule to ensure that confusion about the liquor control

board's dual role did not prevent collection of the excise tax. Or, it may be that the "tax-paid" provision of § 15-205(b), as applied to purchases from wholesalers, merely reflects the fact that, at the time the predecessor provisions were originally enacted in 1933, the liquor control boards to which those tax provisions applied functioned only as retailers. But we see no obvious reason why the interpretation of § 15-205(b) should dictate the interpretation of § 12-102 in the current regulatory scheme.

The Comptroller, however, has traditionally interpreted the anti-discrimination provision in light of the tax rules applicable to wholesaler-to-DLC sales. As the longstanding interpretation of the agency charged with administering Article 2B, the Comptroller's construction is entitled to some measure of deference. *Sanchez v. Potomac Abatement*, *Inc.*, 417 Md. 76, 83 (2010). Employing that construction here, we conclude that the 2013 amendments to the tax rules of § 15-205—enacted while this opinion request was pending—resolve the questions you present. Under the plain language of the statute as it now reads, the DLC may purchase wine and liquor from a wholesaler without paying the excise tax when it is "[a]cting as a wholesaler" or, in other words, when it "resell[s] the wine and liquor" to a private retailer. § 15-205(*l*)(2)(i). But when "acting as a retailer" and selling the alcohol in its own retail dispensaries, the DLC must still purchase "alcohol on which the excise tax has been paid." § 15-205(*l*)(2)(ii). Thus, even if the DLC qualifies as a "retailer" for purposes of § 12-102(a) whenever it purchases alcohol on which the excise tax has been paid, the 2013 amendments now make clear that the DLC's status depends on whether the DLC is "acting as a retailer" or "acting as a wholesaler."

We would reach the same conclusion even if were we to depart from the Comptroller's interpretation and apply what we see as a functional approach to defining a liquor control board's status when purchasing alcohol from wholesalers. Under that approach, a liquor control board qualifies as a retailer when it functions as one, *i.e.*, when it purchases alcohol from wholesalers for re-sale to consumers in its dispensaries. Conversely, a liquor control board qualifies as a wholesaler when it purchases alcohol from other wholesalers for re-sale to bars, restaurants, and other retailers. A number of considerations suggest to us that this might more closely reflect the Legislature's intent.

As explained above, liquor control boards are unique participants within Maryland's current regulatory structure and

are specifically granted the power to act at different times as both wholesalers and retailers. For this reason, the Legislature has explicitly defined "retail dealer" to include "a county dispensary," § 1-102(a)(23), and "wholesaler" to include a "liquor control board and a county wholesale dispensary." § 1-102(a)(27)(ii). The Comptroller has also recognized that liquor control boards sometimes function as wholesalers. *See* COMAR 03.02.01.12G (excluding a "county dispensary acting as a wholesaler" from the scope of a regulation concerning other wholesalers); *see also Maryland State Licensed Beverage Ass'n*, 138 F. Supp. at 699 (observing that the liquor control boards in monopoly counties "act as both wholesalers and retailers"). These provisions suggest that the General Assembly intended, and the Comptroller and others have recognized, that liquor control boards would function as retailers in some instances and wholesalers in others.[15]

Indeed, the plain language of the anti-discrimination provision itself leaves room for a functional characterization of the DLC's status when purchasing alcohol from wholesalers. As discussed above, that provision prohibits price discrimination "between one dispensary and another dispensary, between one wholesaler and another wholesaler or between one retailer and another retailer . . . ." § 12-102(a). Given that the DLC can qualify as either a wholesaler or a retailer, we see nothing in the language of § 12-102(a) that would require the DLC be treated as one type of entity for all purposes. Instead, it seems more likely that the General Assembly intended for liquor control boards to be considered wholesalers when they are functioning like wholesalers and retailers when they are functioning like retailers.[16]

---

[15] Our description of legislative intent is consistent with the historical context in 1943, when the anti-discrimination provision was enacted. At that time, the liquor boards in Montgomery County and Worcester County, at least, had both a wholesale function and a retail function. *See supra* at 4. And Article 2B, as of 1943, already defined the terms "wholesaler" and "retail dealer" to include, respectively, a "County Liquor Control Board" and a "county dispensary." § 1(g), (h) (1943 Supp.). The General Assembly thus had already recognized that some liquor control boards had a dual role as both a wholesaler and a retailer.

[16] There is a third possible interpretation of § 12-102(a), under which a liquor control board is considered neither a "wholesaler" nor a "retailer" and instead is protected by the provision prohibiting wholesalers and producers from discriminating "between one

The 2013 amendments to § 15-205(*l*) appear to confirm the Legislature's intent that the status of the Worcester DLC, at least, should be determined by this type of functional analysis. Those amendments make clear that the DLC sometimes "[a]ct[s] as a wholesaler" and at other times "act[s] as a retailer." § 15-205(*l*)(2). Given that Senator Mathias, having requested this opinion, sponsored the amendments on the floor of the Senate, we read those amendments as directly relevant to the issues we weigh here.[17]

Ultimately, the resolution of your question does not require us to decide which approach—the Comptroller's approach or the functional approach we suggest—best reflects legislative intent. The 2013 amendments make clear that, either way, the Worcester DLC should be treated as a "retailer" when it purchases alcoholic beverages from a wholesaler for re-sale in its retail dispensaries and as a "wholesaler" when it purchases alcoholic beverages for re-sale to bars, restaurants, or other license holders.[18]

---

dispensary and another dispensary." We do not believe, however, that the Legislature meant to exclude liquor control boards from the definitions of "wholesaler" and "retailer" simply because it also mentioned "dispensar[ies]" in the section of the statute. To the contrary, the definitions of "wholesaler" and "retailer" both specifically include dispensaries within their terms. §§ 1-102(a)(23), 1-102(a)(27)(ii). We think it more likely that the Legislature intended simply to clarify that dispensaries—like wholesalers and retailers—are entitled to the protections afforded by § 12-102(a).

[17] We recognize that the motivations of a legislative sponsor may not reflect the intent of the legislative body and that, ordinarily, "[i]n a case for the construction of a statute it is a mistake to refer the court to reports of the intention of the draftsmen . . . ." *Baltimore Retail Liquor Package Stores Ass'n v. Board of License Comm'rs*, 171 Md. 426, 430 (1937); *see also* 60 *Opinions of the Attorney General* 444, 478 n.11 (1975). Here, however, where we do not have the benefit of either adversary presentations on this particular issue or a meaningful legislative history, and where the subject of the amendments involves matters of interest specific to Worcester County, we are inclined to conclude that Senator Mathias—and through him the Legislature—intended for the amendments to § 15-205(*l*) to bear on the issues we consider here.

[18] We emphasize, however, that the DLC would be prohibited from using product purchased from wholesalers at wholesale prices to satisfy its dispensaries' retail needs. To allow otherwise would not only

Before concluding, it is important to clarify the limitations of this opinion.  First, we express no opinion about how our conclusions today will affect the prices the DLC pays for alcohol other than to say that, when the DLC is acting as a wholesaler, it must be charged the same rate that is charged other wholesalers. If a wholesaler does not offer a discount to other wholesalers or charges those other wholesalers the same amount as it charges retail dealers, nothing in the statute would compel it to reduce the price currently charged to the Worcester DLC.  Second, because the opinion request asked us only whether the Worcester DLC was a "retailer" or "wholesaler" when purchasing from a licensed Maryland *wholesaler*, we have not considered how the DLC should be treated by manufacturers and producers for purposes of § 12-102(a).  We note, however, that the 2013 amendments did not address this issue; they only clarified the tax rules with respect to the Worcester DLC's purchases from wholesalers.  *See* § 15-205(*l*)(2) (describing tax treatment of the DLC's purchases of alcohol "from a licensed wholesaler").  A different analysis may well obtain when the DLC purchases from manufacturers and producers.

Finally, we do not decide how the anti-discrimination provision of § 12-102 applies to the liquor control boards in Wicomico or Somerset County, or to the Montgomery County Department of Liquor Control, because the opinion request concerned only the Worcester County DLC.  The 2013 amendments do not conclusively resolve the issue of whether these other liquor control boards must be treated in the same manner as the Worcester DLC under the anti-discrimination provision.  Although we have described the reasons why we believe the General Assembly may have intended a functional approach more generally, the Legislature has only made its intent clear with respect to the Worcester County DLC.

---

violate the new tax provisions of § 15-205(*l*), but would also undermine the anti-discrimination provision of § 12-102.  Accordingly, it will be incumbent upon the DLC to make clear at the time of purchase and in its records what product is being purchased for what purpose.  Given the existing requirements upon the DLC to "keep accurate records of all purchases of alcoholic beverages" and to prepare an annual report that contains a "full and complete statement of the business transacted . . . and the results of operations of the dispensaries," *see* § 15-206, COMAR 03.02.01.03B, this should not substantially change the DLC's current administrative burden.

The answers to these unresolved questions may have important policy ramifications both for the Worcester DLC and other Maryland liquor control boards. If, for example, a liquor control board currently receives the same prices from out-of-state producers as other private wholesalers regardless of whether the board is operating as a wholesaler or as a retailer, a functional approach could change the business model for these boards in unanticipated ways. The Legislature, therefore, may want to take a comprehensive look at how the anti-discrimination provision of § 12-102(a) should apply across all control counties. As explained above, the role of some liquor control boards and certain practical realities have changed substantially from when the tax provisions and anti-discrimination provisions were first enacted. Under these circumstances, legislative action could add some much needed clarity to this area of the law.

# III

## Conclusion

In summary, we conclude that when the Worcester DLC purchases alcohol from a wholesaler, it should be treated as a wholesaler for tax purposes *and* under the anti-discrimination provision of § 12-102(a) if it is acting as a wholesaler by re-selling the alcohol to other retailers. Conversely, the DLC is a retailer for both of these purposes when it purchases alcohol from a wholesaler for sale in its own retail dispensaries.

Douglas F. Gansler
Attorney General of Maryland

Brian Oliner
Assistant Attorney General

Adam D. Snyder
Chief Counsel, Opinions & Advice

* Assistant Attorney General Patrick B. Hughes contributed significantly to the preparation of this opinion.